# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | 09-10332 / Chapter 11 |
| | ) | |
| THE HAMMOCKS, LLC d/b/a | ) | |
| Richmond Hill Inn, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| ─────────────────────────── | ) | Adversary Proceeding |
| | ) | No. 09-01035 |
| THE HAMMOCKS, LLC d/b/a | ) | |
| Richmond Hill Inn, Debtor-in-Possession, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF MOTION TO WITHDRAW** |
| HARLEYSVILLE MUTUAL INSURANCE | ) | **REFERENCE AS TO ADVERSARY** |
| COMPANY, | ) | **PROCEEDING NO. 09-01035** |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Harleysville Mutual Insurance Company ("Harleysville"), the

Defendant in the Adversary Proceeding filed by Debtor-in-Possession/Plaintiff The Hammocks,

LLC d/b/a Richmond Hill Inn ("The Hammocks") in Adversary Proceeding No. 09-01035 filed

in the United States Bankruptcy Court for the Western District of North Carolina (the

"Adversary Proceeding"), and pursuant to 28 U.S.C. § 157 and Federal Rule of Bankruptcy

Procedure 5011 hereby requests withdrawal of the reference to the Bankruptcy Court as to

Adversary Proceeding No. 09-01035.

Pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure, Harleysville

requests that its Motion to Withdraw the Reference be transmitted in a timely manner to the

United States District Court for the Western District of North Carolina for hearing and

disposition of the Motion.

DMEAST #12091446 v1

## INTRODUCTION

The crux of The Hammocks' Adversary Proceeding is the recovery of money. These breach of contract, bad faith, and unfair and deceptive trade practices claims are legal in nature, and Harleysville has a constitutional right to have the claims and defenses heard by a jury.

In addition to its constitutional right to a jury trial, there are additional compelling reasons to withdraw the reference at this early stage and permit the litigation to proceed in the District Court. The District Court has greater familiarity with the types of state law claims at issue here than does the Bankruptcy Court, and judicial economy and efficiency are best served by having both the Adversary Proceeding and the lawsuit filed by Harleysville in the District Court against RHI, which asserts that it is The Hammocks' mortgagee, consolidated in the District Court for purposes other than trial. Jury trials will be requested in both actions, so they will both necessarily be tried in the District Court. Withdrawal of the reference at the earliest stage will permit an orderly and joint discovery and pre-trial process involving one judge who will be involved in the process from initial status hearing through trials, including rulings on any pre-trial dispositive and other motions. There will be no delay occasioned by the inevitable appeal to the District Court of the Bankruptcy Court rulings on such motions. Because the jury trials will be in the District Court, considerations of judicial economy and efficiency mandate withdrawal of the reference as to the Adversary Proceeding at this time. Moreover, it is inappropriate to litigate this non-core matter in the Bankruptcy Court.

## FACTS

On March 25, 2009, The Hammocks filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Petition"). As of the date of this

Motion, The Hammocks continues to manage its assets and affairs as debtor-in-possession

pursuant to §§ 1107 and 1108 of the Bankruptcy Code, and no trustee has been appointed in this

case.

In October 2008, prior to The Hammocks' Petition, Harleysville issued a policy of

insurance to The Hammocks ("Policy") that provided coverage for The Hammocks' business

known as the Richmond Hill Inn ("Richmond Hill Inn Property").

On or about March 19, 2009, one of the buildings on the Richmond Hill Inn

Property that was commonly known as "the Mansion" sustained damages as a result of a fire,

and on May 29, 2009, The Hammocks submitted a purported proof of loss to Harleysville under

the Policy (the "Fire Loss").

On October 5, 2009, Harleysville filed a Motion for Relief from the Automatic

Stay to pursue a declaratory judgment action against The Hammocks in the United States District

Court for the Western District of North Carolina to determine the rights and obligations of the

parties under the Policy with respect to the Fire Loss. (Bankruptcy Doc. 68).[1]

On October 5, 2009, Harleysville also filed a declaratory judgment complaint

("Harleysville's RHI Complaint") against Richmond Hill, Inc. ("RHI") in the Western District of

North Carolina captioned Harleysville Mut. Ins. Co. v. Richmond Hill, Inc. and bearing civil

action number 1:09-cv-00377 (the "RHI Action"). RHI is a mortgagee holding a secured interest

in the Richmond Hill Inn Property pursuant to a deed of trust and promissory note entered into

by RHI and The Hammocks on October 10, 2005, for a loan of $8.8 million. (RHI Action – Doc.

1; Harleysville's RHI Complaint ¶ 17).

---

[1]      "Bankruptcy Doc." references docket entries in The Hammocks Bankruptcy proceeding
No. 09-10332.

3

On October 28, 2009, the Bankruptcy Court denied Harleysville's Motion for Relief from the Automatic Stay and allowed The Hammocks until January 20, 2010, to file a "civil action" against Harleysville ("Order"). (Bankruptcy Doc. 82). Harleysville appealed the Order to the Western District of North Carolina. (Bankruptcy Doc. 86). The appeal is currently pending and was formally docketed by the District Court on December 16, 2009. Harleysville's appeal brief is due on or before January 4, 2010, and The Hammocks' brief is due on or before January 19, 2010. (District Court case number 1:09-cv-00411-MR – Doc. 9). One of the issues involved in that appeal is whether the insurance dispute between Harleysville and The Hammocks is a core proceeding.

On December 2, 2009, The Hammocks initiated this Adversary Proceeding by filing a Complaint alleging claims of breach of contract, bad faith, and unfair and deceptive trade practices against Harleysville. (Bankruptcy Doc. 116). In the Adversary Proceeding, The Hammocks seeks to recover from Harleysville compensatory damages of "$6,021,563.00, together with interest" for breach of contract along with extra-contractual damages for alleged bad faith and unfair and deceptive trade practices. *Id.* at ¶ 29.

On December 11, 2009, RHI filed an Answer to Harleysville's RHI Complaint, Counterclaims against Harleysville, and a Motion to Transfer the RHI Action to the Bankruptcy Court ("RHI's Transfer Motion"). RHI's Counterclaims include a claim for negligence and corresponding demand for millions of dollars in damages.

Contemporaneous with the filing of this Motion, Harleysville is filing with the Bankruptcy Court a Motion to Stay Adversary Proceeding so as to permit the District Court time to rule on this Motion to Withdraw Reference before a response is due to the Adversary

4

Proceeding.[2] Harleysville is also filing in the District Court a response to RHI's Motion to

Transfer and an Answer to RHI's Counterclaims in which Harleysville requests the jury trial to

which it is entitled on RHI's negligence claim.

In its Answer to the Adversary Proceeding, whether filed in the Bankruptcy Court

or the District Court, Harleysville will demand the jury trial to which it is entitled. Accordingly,

Harleysville will have demanded jury trials in both the Adversary Proceeding and the RHI

Action. Harleysville represents that it will demand a jury trial in both actions.

Harleysville has not submitted a proof of claim in The Hammocks' bankruptcy

proceeding, and it has neither subjected itself to the Bankruptcy Court's jurisdiction nor waived

its right to a jury trial with respect to all claims asserted in and defenses to the Adversary

Proceeding. Harleysville does not consent to trial by jury of either the Adversary Proceeding or

the RHI Action in the Bankruptcy Court.

---

[2]    Harleysville's rights will be detrimentally affected if the Adversary Proceeding is not
stayed pending an order on this Motion. Harleysville has a right to and intends to assert a
counterclaim against The Hammocks that may be considered compulsory and waived if
the counterclaim is not asserted with Harleysville's answer. However, by asserting and
preserving the counterclaim against The Hammocks in the Adversary Proceeding,
Harleysville may in effect waive its right to a jury trial. *See In re Robin Hood, Inc.*, 192
B.R. 124 (W.D.N.C. 1995) (where debtor files an adversary proceeding against a creditor
that has not filed a proof of claim and that creditor then files a counterclaim, that creditor
has succumbed to the jurisdiction of the bankruptcy court and waived its right to a jury
trial); *In re Hudson*, 170 B.R. 868 (E.D.N.C. 1994) (same). Therefore, a stay of the
Adversary Proceeding is necessary to protect Harleysville's rights. Harleysville argues
that the proper route is to allow a stay of the Adversary Proceeding until an Order is
entered regarding this Motion. After such Order is entered, Harleysville may then
proceed to assert its counterclaim in the District Court without waiving its rights to a jury
trial.

5

## ARGUMENT

### I.    HARLEYSVILLE'S RIGHT TO A JURY TRIAL MANDATES WITHDRAWAL OF THE REFERENCE AS TO THE ADVERSARY PROCEEDING

The reference should be withdrawn as to this Adversary Proceeding because Harleysville has a right to a jury trial that cannot be provided in the Bankruptcy Court.

Cases under the Bankruptcy Code and all proceedings arising in or related to a case under the Bankruptcy Code are automatically referred from the District Court to the Bankruptcy Court under the authority granted to District Courts by 28 U.S.C. § 157(a).  But 28 U.S.C. § 157(d) authorizes the District Court to withdraw that reference to the Bankruptcy Court with regard to "any case or proceeding" "on its own motion or on a timely motion by any party, for cause shown."

There are several factors that the courts will consider in determining if cause exists under § 157(d) to withdraw the reference, *i.e.*: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial.  *In re Three Rivers Companies*, Civil Action No. 2:09-cv-00188, 2009 U.S. Dist. LEXIS 76734, at * 11-12 (S.D. W. Va. August 27, 2009).  Statutory and case law is clear that the preservation of the right to a jury trial is dispositive.

In 1994, Congress enacted the Bankruptcy Reform Act, which amended the Bankruptcy Code in part by adding § 157(e), which allows bankruptcy courts to conduct jury trials with the consent of all parties.  28 U.S.C. § 157(e) ("If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.").

6

However, if all of the parties do not consent, as is the case here given

Harleysville's position that it does not consent to a jury trial in the Bankruptcy Court, the jury

trial will need to take place in the district court and the reference should be withdrawn. *See, e.g.,*

*In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993) (In a ruling predating the

Bankruptcy Reform Act, the Fourth Circuit held that where there exists a right to a jury trial "it

must take place in the district court."); *Hudson v. WMR Capital Corp.*, No. 1:06CV01036, 2007

U.S. Dist. LEXIS 36745 (M.D.N.C. May 11, 2007); *In re Bonds Distrib. Co.*, No. 97-52130C-

7W, 2000 Bankr. LEXIS 2011, at *7, 39-43, 47 (Bankr. M.D.N.C. Nov. 15, 2000), rev'd on

other grounds, 39 Fed. Appx. 895 (4th Cir. 2002); *In re Mid-Atlantic Res. Corp.*, 283 B.R. 176,

192 (S.D. W.Va. 2002) ("If the parties do not consent to the bankruptcy court conducting the

[jury] trial, the trial will be held before this Court); *see also In re Equimed*, No. H-95-2241, 2000

U.S. Dist. LEXIS 22185, at *21-22 (D. Md. July 24, 2000) ("Withdrawal of the reference is

therefore required in instances where a defendant who is entitled to a jury trial does not consent

to the holding of such trial in the Bankruptcy Court.").

Harleysville is entitled to a jury trial of the issues raised in the Adversary

Proceeding.  The right to jury trial "in Suits at common law, where the value in controversy shall

exceed twenty dollars," is guaranteed by the Seventh Amendment of the United States

Constitution.  The United States Supreme Court has long interpreted the phrase "Suits at

common law" to mean "suits in which *legal* rights are to be ascertained and determined, in

contradistinction to those where equitable rights alone were recognized and equitable remedies

were administered." *Parsons v. Bedford*, 28 U.S. 433 (1830) (as quoted in *Granfinanciera,*

*S.A. v. Nordberg*, 492 U.S. 33, 41 (1989)).  The Seventh Amendment also applies to actions

brought to enforce statutory rights that are analogous to common-law causes of action ordinarily

7

DMEAST #12091446 v1

decided by English courts of law, as opposed to courts of equity or admiralty, in the late eighteenth century. *Curtis v. Loether,* 415 U.S. 189, 193 (1974).

The Hammocks' Complaint is an action against Harleysville for monetary damages on claims of breach of contract, bad faith, and unfair and deceptive trade practices (G.S. § 75-16). These are legal claims to which Harleysville has a Seventh Amendment right to a jury trial.[3] (Bankruptcy Doc. 116). *See Granfinanciera,*, 492 U.S. 33, 49 (1989) (a right to jury trial attaches to legal actions seeking to recover monetary damages); *Stansbury Poplar Place*, 13 F.3d at 125 (4th Cir. 1993) (citing *Granfinanciera* and holding Seventh Amendment jury trial right attaches to actions seeking monetary damages). *See also Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994) (for purposes of determining right to jury trial, action for money damages based on breach of contract is traditionally a legal, rather than equitable, claim); *In re RDM Sports Group, Inc.*, 260 B.R. 915 (Bankr. N.D. Ga. 2001) (where action is simply for recovery of a money judgment, the action is one at law, for purposes of determining party's right to jury trial); *In re EZ Pay Services, Inc.*, 389 B.R. 278 (Bankr. M.D. Fla. 2008) (actions seeking monetary relief are generally legal in nature and therefore triable by jury under Seventh Amendment); *Debaillon v. Steffes*, 195 B.R. 362 (M.D. La. 1996) (suits seeking monetary damages are unquestionably legal in nature, for purposes of determining whether Seventh Amendment right to jury trial applies); *In re Mathews*, 203 B.R. 152 (Bankr. D. Minn. 1996) (in determining plaintiff's right to trial by jury, if plaintiff prays for simply the recovery and possession of specific real or personal property, or for the recovery of money judgment, the action is one at law to which the right to jury trial attaches); *In re Lands*

---

[3]    Likewise, the North Carolina Constitution guarantees a right to jury trial on the claims asserted by The Hammocks.

8

*End Leasing, Inc.*, 193 B.R. 426 (Bankr. D.N.J. 1996) (where action is for recovery of money

judgment, it is unquestionably legal, entitling parties to jury trial).

Most instructive on this point is *In re Bonds Distribution Co.*, 2000 Bankr.

LEXIS 2011, at *7, 39-43, 47, in which the court ruled that an unfair or deceptive acts or

practices claim under G.S. § 75-16 entitles a party to a jury trial and "recommend[ed] that the

reference be withdrawn without any further proceedings in th[e] [bankruptcy] court." The

court's analysis with regard to the § 75-16 claim applies with equal force to The Hammocks'

§ 75-16 claim against Harleysville and mandates withdrawal of the reference:

> The Eleventh Claim is one created by statute. G.S. § 75-1.1
> declares unlawful "unfair or deceptive acts or practices in or
> affecting commerce ...." G.S. § 75-16 grants a right of action to
> any person or entity who is injured or damaged by a violation of
> Chapter 75. Specifically, this statute provides that "such person,
> firm or corporation so injured shall have a right of action on
> account of such injury done, and if damages are assessed in such
> case judgment shall be rendered in favor of the plaintiff and
> against the defendant for treble the amount fixed by the statute."
>
> ***
>
> In the present case, it seems clear that one of the purposes of G.S.
> § 75-16 is to impose the penalty of treble damages. Plaintiff
> therefore does not dispute the right to jury trial as to this claim.
> Plaintiff concedes "that with regard to a claim for treble damages
> under N.C. Gen. Stat. § 75-1.1, it is the province of the jury to
> determine whether the actions complained of actually occurred."
> However, plaintiff argues that a jury simply is not required in this
> case because "there is no issue of fact as to the actions and
> activities that took place in this case." This argument cannot be
> accepted for several reasons. First, it is not at all clear that none of
> the actions which plaintiff relies upon in this claim are disputed.
> Secondly, in a claim under G.S. § 75-1.1, there are issues for jury
> determination other than whether the conduct of the defendant
> occurred. The other issues for jury determination include
> proximate cause, i.e., whether the defendant's conduct was the
> proximate cause of injury to the plaintiff and, if so, the amount of
> actual damages sustained by the plaintiff as a proximate result of
> the defendant's conduct.

DMEAST #12091446 v1

\*\*\*

> Plaintiff's argument that no jury trial is required regarding the
> Eleventh Claim which seeks actual and punitive damages is
> rejected.

*Id.* at 39-43, 47. This Court should also withdraw the reference based on Harleysville's right to a

jury trial on the "unfair or deceptive acts or practices" claim.[4]

Without Harleysville's consent, which it does not provide, the Bankruptcy Court

lacks jurisdiction to conduct the jury trial to which Harleysville is constitutionally entitled. It seems

impossible to find a clearer case for good cause for withdrawal of the reference, because if the

reference is not withdrawn the case simply cannot proceed to conclusion in any court (not the

District Court because the reference is not withdrawn, not the Bankruptcy Court because of the

jury right and jurisdiction issues discussed above, and, presumably, not the state courts because

the identical litigation would be pending in the Bankruptcy Court, at least absent The

Hammocks' dismissal of the Complaint). Accordingly, Harleysville's Motion should be granted,

and the reference to the Bankruptcy Court should be withdrawn so that this matter may properly

proceed before the District Court.

## II.     OTHER FACTORS SUPPORT WITHDRAWAL OF THE REFERENCE

Although preservation of the right to a jury trial is the dispositive factor in

determining that the reference should be withdrawn as to this Adversary Proceeding, other

factors support this result.

---

[4]     Harleysville is also entitled to a jury trial on the breach of contract and bad faith claims
asserted by The Hammocks in the Adversary Proceedings.

**A.    Withdrawal Of The Reference Promotes Judicial Economy And The Efficient Use Of The Parties' Resources**

Two factors referenced by the *In re Three Rivers Companies* court are promotion of judicial economy and the efficient use of the parties' resources. Both the parties and the Court benefit from an efficient pre-trial process that consolidates discovery of the RHI Action and the Adversary Proceeding and involves one judge from initial Rule 16 conference through jury trials of the two cases. This allows the Court and parties to avoid the cost of inefficient efforts, including duplicate depositions that might be required if this Adversary Proceeding remained in the Bankruptcy Court while the RHI Action properly remained in the District Court.

The efficiencies of having the District Court handle both cases (rather than the Bankruptcy Court handling both or each court handling one) will be apparent at every stage of the proceedings and most pronounced in matters involving dispositive motions, determinations of the scope of permissible discovery, experts and challenges to their opinions, and the scheduling of pre-trial matters after discovery closes. In short, it makes more sense from an efficiency standpoint to withdraw the reference sooner rather than later. Having the District Court Judge involved from the beginning is more efficient than having the litigation proceed on a piecemeal basis before more than one judge, especially given the inevitability of Bankruptcy Court rulings being appealed to the District Court. The efficiency of having the District Court involved in management of the litigation early in the proceedings is underscored by the better qualifications of the District Court  than the Bankruptcy Court to handle cases involving state law claims with which the District Court routinely deals and with which Bankruptcy Courts are not as familiar. *Cf, In re Mitchell*, 206 B.R. 204, 213 (Bankr. C.D. Cal. 1997) (abstaining in a case involving breach of contract, conversion, fraud, and misrepresentation on the basis that bankruptcy judges do not have any special expertise in such areas and that the district court

11

handling the case was better qualified than the bankruptcy court, especially in light of the fact

that the jury trial can only be conducted by the bankruptcy court with consent of all of the

parties); *In re J&J Towne Pharmacy, Inc.*, 2000 WL 568355 (Bankr. E.D. Pa. 2000) (bankruptcy

court abstained from hearing the matter in part because the claims consisted of state or federal

non-bankruptcy law issues "which the district or state courts would be better suited to decide").

### B.    The Adversary Proceeding Is Not A Core Proceeding

Another factor discussed by the *In re Three Rivers Companies* court is whether

the proceeding is core or non-core.  As Harleysville argued in the context of seeking relief from

the stay to file its action against The Hammocks, and as it will argue to this Court on appeal from

the Bankruptcy Court's denial of that requested relief, the dispute between The Hammocks and

Harleysville is not a core proceeding.[5]  Because this is not a core proceeding, it should be

litigated to conclusion in the District Court.

This Adversary Proceeding is not core under the statutory test Congress enacted

in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71

(1982).  There, the Supreme Court held that a non-Article III court lacks the power to issue final

orders without the consent of the litigants.  The Court explained that "the restructuring of debtor-

creditor relations, which is at the core of the federal bankruptcy power, must be distinguished

from the adjudication of state-created private rights, such as the right to recover contract

damages." *Id.* at 71.  Providing Congress and the lower courts with guidance regarding the

limits of bankruptcy courts' jurisdiction, the Court stressed that the adjudication of "right[s]

---

[5]    In its October 28, 2009 Order Denying Relief From Stay, at Paragraph 6, the Bankruptcy
Court determined that "The fire loss claim is an asset of the Chapter 11 Estate and the
prosecution of that claim is a core matter."  Harleysville has appealed that determination
to this Court.

DMEAST #12091446 v1

created by state law, right[s] independent of and antecedent to the reorganization petition that confer[s] jurisdiction on the Bankruptcy Court" is properly the province of Article III courts. *Id.* at 84.

Congress enacted 28 U.S.C. § 157 in direct response to *Marathon*. Section 157 categorizes all proceedings as core or non-core. In a non-core proceeding, unless the parties otherwise agree, the bankruptcy court can only recommend findings of fact and conclusions of law to the district court. *See* Section 157(c)(1); *Nichols & Assocs. Tryon Properties v. United Capital Ins. Co. (In re Nichols & Assocs. Tryon Properties)*, No. 93-1753, 1994 U.S. App. LEXIS 25529, at *9 (4th Cir. Sept. 14, 1994) ("Bankruptcy judges may also hear non-core related proceedings, but they may not enter final orders absent the consent of all the parties.").

Core proceedings are those either "arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). A proceeding is core "'if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Millennium Studios, Inc.*, 286 B.R. 300, 305 (D. Md. 2002) (ruling that pre-petition, state-based breach of contract claims were "non-core" despite possible significance of those claims to the administration of the bankruptcy estate) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

This requirement, namely that a core proceeding must either (i) invoke a substantive bankruptcy right or (ii) be of a nature that could arise only in the context of a bankruptcy case, ensures that core jurisdiction is exercised in a manner consistent with *Marathon*:

> [A] proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case. This Court and other courts of appeals have relied on this test to ensure that § 157(b)

DMEAST #12091446 v1

13

> core proceeding jurisdiction is exercised in a manner consistent
> with *Marathon*.

*Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal quotation marks and citations

omitted).  Courts including those within the Fourth Circuit have universally adopted this test.

*See In re Nichols & Assocs. Tryon Properties*, 1994 U.S. App. LEXIS 25529, at *9 (4th Cir.

Sept. 14, 1994) ("Core proceedings [] must 'arise in' or 'arise under' a title 11 case.") (citing *In*

*re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)); *Fed. Ins. Co. v. Parnell (In re Peanut Corp. of Am.)*,

407 B.R. 862, 865 (W.D. Va. 2009) ("In general, 'a proceeding is core under section 157 if it

invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could

arise only in the context of a bankruptcy case.') (quoting *In re U.S. Airways Group, Inc.*, 296

B.R. 673, 682 (E.D. Va. 2003) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987))); *see also*

*In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) (explaining that "a proceeding is core

under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that,

by its nature, could arise only in the context of a bankruptcy case"); *Security Farms v. Int'l Bhd.*

*Of Teamsters, Chauffeurs, Warehouseman & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997)

("Actions that do not depend on bankruptcy laws for their existence and that could proceed in

another court are considered 'non-core.'"); *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d

770, 773 (8th Cir. 1995) ("Core proceedings under 28 U.S.C. § 157 are those which arise only in

bankruptcy or involve a right created by federal bankruptcy law."); *Sanders Confectionary*

*Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("A core proceeding either invokes

a substantive right created by federal bankruptcy law or [is] one which could not exist outside of

the bankruptcy."); *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir. 1990) ("Actions which do not

depend on the bankruptcy laws for their existence and which could proceed in another court are

not core proceedings.").

14

The Adversary Proceeding raises straightforward, conventional state law contract and tort questions. These issues are routinely decided by district courts as well as by state courts. The claims and defenses are not core: "It seems self-evident that a claim, like the Debtor's breach of contract claim, that pre-dates the filing of the Chapter 11 case cannot be said to have arisen within that case." *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007); *see also id.* ("It follows that because the Debtor's breach of contract claim and tortious interference claim would have existence outside of the bankruptcy, they were not within the bankruptcy court's 'arising in' jurisdiction.").

The Adversary Proceeding does not invoke substantive bankruptcy rights, and so does not arise under title 11. Nor are the asserted claims unique to bankruptcy proceedings or uniquely affected by The Hammocks' bankruptcy case. Litigation of the claims presented in the Adversary Proceeding will not require this Court to perform any of the core bankruptcy functions that might otherwise convert this action into something core.

*In Humboldt Express Inc. v. The Wise Co., Inc. (In re Apex Express Corp.)*, the Fourth Circuit explained that:

> the logic used by the courts which would treat 'accounts receivable' and other basically contract claims as 'core' proves too much. The main justification supplied by these courts is that because the accounts receivable are in some sense the property of the bankruptcy estate (by altering its size), then the claims are 'core.' [citations omitted]. But, under this logic any claim involving a potential money judgment would be considered core, even the precise contract claim at issue in *Northern Pipeline* [*Marathon*]. Thus, the rationale used by these courts would swallow the rule established by *Northern Pipeline* [*Marathon*].

190 F.3d 624, 631-32 (4th Cir. 1999) (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir. 1993) (to treat pre-petition contract claims as core proceedings under §§ 157(b)(2)(A) or (O) "creates an exception to *Northern Pipeline* that would swallow the rule.")).

15

Similarly, in *In re Nichols & Associates Tryon Properties*, the Fourth Circuit held that an adversary proceeding filed by debtors seeking insurance policy proceeds after their mall was destroyed by fire was a non-core proceeding. 1994 U.S. App. LEXIS 25529, at *10 (4th Cir. Sept. 14, 1994) ("Because the adversary proceeding at issue here is 'otherwise related to' the Nichols bankruptcy, i.e., not one which 'arises in' or 'arises under' the title 11 case, we find that it is a non-core proceeding.").

Two other district and bankruptcy courts within the Fourth Circuit have ruled that a dispute over insurance policy proceeds is not transformed into a core proceeding merely because the outcome may have an impact on the administration of the estate. *See Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 731 (Bankr. D. Md. 2004):

> Here, Plaintiff's contract claim is grounded in state law (not rights created by federal bankruptcy law), and arises from various pre-petition contracts with Defendant, namely, its insurance contracts covering asbestos-related liabilities and the Wellington Agreement. Defendant has not filed a proof of claim, and thus it has not consented to the jurisdiction of this court. It is conceivable that a resolution of the contract dispute with Defendant may have an impact on the administration of the estate. However, treating this contract dispute as a "core proceeding" would create an exception to *Marathon* that would "swallow the rule," as any contract action that the Plaintiff would pursue against a defendant would likely be expected to inure to the benefit of the estate and thus "concern" its "administration." *See Apex, 190 F.3d at 632*. Moreover, inasmuch as the parties have already submitted their dispute concerning Defendant's refusal to make liability payments to Plaintiff to the ADR proceeding, the claim, while related to Plaintiff's bankruptcy, is not one that could arise only in the context of a bankruptcy nor one that has an exclusive connection to a public right of debtor-creditor relations. These considerations militate against a finding that Plaintiff's contract claim is "core" to the bankruptcy, and the court so concludes.

Likewise, in *In re Peanut Corp. of America*, 407 B.R. 862, 865 (W.D. Va. 2009), an interpleader adversary action brought to determine the allocation of proceeds under a directors

16

and officers insurance policy was non-core because "[i]t does not invoke a substantive right provided by title 11, nor is it a proceeding that could arise only in the context of a bankruptcy case. And because it does not involve issues uniquely related to bankruptcy law, the interpleader action could clearly proceed in a forum outside Bankruptcy Court." Thus, the court explained that "[r]eading *28 U.S.C. § 157(b)(2)(A) and (O)* as broadly as the Trustee suggests could result in almost every conceivable adversary proceeding filed in Chapter 7 bankruptcy being treated as a core claim."

The Hammocks itself appears to have agreed that a claim such as this one is not a core proceeding. Prior to filing for Chapter 11 bankruptcy relief, The Hammocks initiated a lawsuit against RHI and its owners in the Superior Court Division of Buncombe County alleging fraud and unfair and deceptive trade practices in the sale of the Richmond Hill Inn ("State Court Action"). After the Hammocks filed for bankruptcy, RHI attempted to remove The Hammocks' State Court Action to the Bankruptcy Court to proceed with it as an adversary proceeding in The Hammocks' bankruptcy proceeding. (Bankruptcy Doc. 35). The Hammocks opposed RHI's removal, and moved to remand its State Court Action back to the Superior Court Division of Buncombe County on the grounds that The Hammocks'claims against RHI and its owners ***were*** ***not core*** proceedings and should not be litigated in the Bankruptcy Court. (Bankruptcy Doc. 43). The Hammocks specifically argued as follows:

> The removing Defendants further contend that the Civil Action is a "core proceeding" under 28 U.S.C. § 157(A), (B), (C), (E), and (O). The allegation that the action is a core proceeding is without merit. Core claims "arise under" or "arise in" bankruptcy proceedings. The claims asserted in the Civil Action are similar to a personal injury claim or action to collect an account receivable. The Plaintiffs' claims are non-core and simply "relate to" the Debtor's Chapter 11 case. Plaintiffs' claims exist irrespective of the bankruptcy. Plaintiffs' claims were filed before the bankruptcy filing, and their outcome will be determined solely on North

DMEAST #12091446 v1

Carolina state law. *See In re Smith-Douglass, Inc.,* 43 B.R. 616
(Bankr.E.D.N.C. 1984) (ruling, without discussion, that an action
by a trustee or debtor in possession to collect an account receivable
is a noncore proceeding).

The Civil Action is not a core matter. Although the
Seller/Defendant Richmond Hill, Inc. has a claim against the
Debtor, the other three defendants do not. The outcome of the
Civil Action will not necessarily involve the allowance or
disallowance of claims or the adjustment of a debtor/creditor
relationship. Although Plaintiffs' claims in the Civil Action arise
out of the purchase of the Inn by the Debtor from Seller/Defendant
Richmond Hill, Inc., the Civil Action does not involve or dispute
the Seller's claim for monies owing under the promissory note
arising from the sale and purchase of the Inn, the Seller's security
interest in the Inn, or property of the estate. Additionally, the Civil
Action does not involve any counterclaims against the Debtor or
property of the estate. The Civil Action may be "related to" the
Debtor's bankruptcy proceeding, but it does not "arise under" title
11 or "arise in" the bankruptcy proceeding.

*Id.* at 3-4. The Hammocks successfully argued that its claims against RHI (including one of the

very same causes of action it asserts against Harleysville) are not core proceedings and do not

belong in Bankruptcy Court. It should not be heard to state a diametric position here.

## CONCLUSION

There is no reason for the claims raised in the Adversary Proceeding to be

litigated in the Bankruptcy Court. Harleysville is entitled to a jury trial and it represents to the

Court that it will request one when it files its answer and counterclaim. It has not yet done so out

of concern that the answer and counterclaim must be filed together and that the filing of a

counterclaim will subject it to jurisdiction of the Bankruptcy Court and result in a waiver of its

right to a jury trial. Because the Bankruptcy Court does not have the authority to hold a jury trial

over Harleysville's objection, the case must be tried in the District Court. For reasons of

efficiency and judicial economy, and given the non-core nature of this dispute, the reference

should be withdrawn immediately so that the claims raised in the Adversary Proceeding and the

18

defenses thereto can be properly litigated in full in the District Court.  The pendency of the RHI

Action in the District Court provides further justification for withdrawal of the reference, as the

two actions can be consolidated for purposes other than trial, and such consolidation in the

District Court will be the most economical and expeditious manner in which to handle the two

lawsuits.

        WHEREFORE, Harleysville respectfully requests that the Court grant

Harleysville's Motion to Withdraw The Reference As To Adversary Proceeding No. 09-01035 in

accordance with the attached Proposed Order.


Dated:  December 28, 2009             */s/ David L. Brown* _____
                                       David L. Brown
                                       N.C. State Bar No. 18942
                                       dbrown@pckb-law.com
                                       Brady A. Yntema
                                       N.C. State Bar No. 25771
                                       byntema@pckb-law.com
                                       PINTO COATES KYRS & BROWN, PLCC
                                       3203 Brassfield Road
                                       Greensboro, NC  27410
                                       Telephone:  336.282.8848
                                       Facsimile:  336.282.8409

                                       Michael R. Nelson
                                       Pa. State Bar No. 65679
                                       NELSON, LEVINE, DE LUCA & HORST
                                       518 East Township Line Road
                                       Suite 300
                                       Blue Bell, PA  19422

                                       Douglas Y. Christian
                                       Pa. State Bar No. 41934
                                       BALLARD SPAHR LLP
                                       1735 Market Street, 51st Floor
                                       Philadelphia, PA  19103

                                       *Attorneys for Harleysville Mutual Insurance*
                                       *Company*

DMEAST #12091446 v1

## CERTIFICATE OF SERVICE

The undersigned certifies that the document to which this Certificate is affixed was served upon the party(s) to this action by means of the Electronic Filing System of the Bankruptcy Court on December 28, 2009.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
*Attorney for Harleysville Mutual Insurance Company*

DMEAST #12091446 v1