UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| HARLEYSVILLE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Appellant, | ) ) | 1:09cv411 |
| v. | ) ) | |
| THE HAMMOCKS, LLC d/b/a Richmond Hill Inn, | ) ) ) | |
| Appellee. | ) ) | |
| _____ | ) ) | |
| In re | ) ) | |
| THE HAMMOCKS, LLC d/b/a Richmond Hill Inn, | ) ) ) | 09-10332 |
| Debtor. | ) ) | |
| _____ | ) | |

---

## APPELLANT HARLEYSVILLE MUTUAL INSURANCE COMPANY'S APPEAL BRIEF

---

# **TABLE OF CONTENTS**

Page

TABLE OF CASES AND AUTHORITIES .................................................................. ii

STATEMENT OF BASIS OF APPELLATE JURISDICTION ................................... 1

STATEMENT OF ISSUE PRESENTED AND
   APPLICABLE STANDARD OF REVIEW ............................................................ 1

STATEMENT OF THE CASE ........................................................................................ 2

FACTS ............................................................................................................................. 2

     (1)  Introduction ................................................................................................ 2

     (2)  Pre-Bankruptcy ........................................................................................ 3

     (3)  The Hammocks' Proof of Loss and Harleysville's Investigation ........... 4

     (4)  Harleysville's Motion for Relief from the Automatic Stay ................... 5

     (5)  RHI Action .............................................................................................. 7

     (6)  The Hammocks' Adversary Proceeding ................................................ 7

LEGAL ANALYSIS ....................................................................................................... 8

     (1)  Harleysville's Action is Grounded in North Carolina State Law
          and Harm Will Result to Harleysville if Relief is Not Granted for
          Harleysville to Pursue its Action in District Court ............................... 10

     (2)  There Will Be No Harm to The Hammocks
          If Harleysville Is Granted Relief from the
          Stay to Pursue Its Declaratory Judgment Action
          in the District Court ............................................................................... 15

     (3)  There will be No Harm to Creditors
          If Harleysville Is Granted Relief from Stay ......................................... 17

     (4)  Judicial Economy and Efficiency will be
          Advanced in the District Court ............................................................. 18

CONCLUSION ............................................................................................................... 19

# TABLE OF CASES AND AUTHORITIES

**Cases:**

*A.H. Robins Co., Inc. v. Piccinin,*
    788 F.2d 994 (4th Cir. 1986) ...................................................................9

*Billing v. Ravin, Greenberg & Zackin,*
    22 F.3d 1242 (3rd Cir. 1994) ...............................................................11

*Claughton v. Mixson,*
    33 F.3d 4 (4th Cir. 1994) .......................................................................9

*Continental Cas. Co. v. Physicians Weight Loss Centers of America, Inc.,*
    61 Fed.Appx. 841 (2003) ....................................................................13

*Debaillon .v Steffes,*
    195 B.R. 362 (M.D.La. 1996) ..............................................................11

*Fortune Ins. Co. v. Owens,*
    351 N.C. 424, 526 S.E.2d 463 (2000) .................................................13

*Granfinanciera, S.A. v. Nordberg,*
    492 U.S. 33, 109 S.Ct. 2782 (1989) ....................................................10

*In re Almac's, Inc.,*
    202 B.R. 648 (D.R.I. 1996) ..............................................................18-19

*In re Apex Exp. Corp.,*
    190 F.3d 624 (4th Cir. 1999) ...............................................................13

*In re Burger Boys, Inc.,*
    183 B.R. 682 (S.D.N.Y. 1994) .............................................................14

*In re Clowser,*
    39 B.R. 883 (Bankr. E.D.Va. 1984) .................................................12-13

*In re Coe-Truman Tech, Inc.,*
    214 B.R. 183 (N.D.Ill. 1997) ...........................................................18-19

*In re EZ Pay Services, Inc.,*
    389 B.R. 278 (Bankr. M.D.Fla. 2008) ..............................................10-11

*In re G-I Holdings, Inc.,*
    278 B.R. 376 (Bankr. D.N.J. 2002) ..................................................13-14

*In re Glen Ivy Resorts, Inc.*,
    171 B.R. 98 (Bankr. C.D. Cal. 1994) ................................................14

*In re Hudson*,
    170 B.R. 868 (E.D.N.C. 1994) ........................................................12

*In re Joyner*,
    416 B.R. 190 (M.D.N.C. 2009) ..........................................................9

*In re Lands End Leasing, Inc.*,
    193 B.R. 426 (Bankr. D.N.J. 1996) ................................................11

*In re Mathews*,
    203 B.R. 152 (Bankr. D.Minn. 1996) ............................................11

*In re Merrick*,
    175 B.R. 333 (9th Cir. B.A.P. 1994) ........................................12-13

*In re Molten Metal Tech., Inc.*,
    271 B.R. 711 (Bankr. D.Mass. 2002) ........................................13-14

*In re Orion Pictures Corp.*,
    4 F.3d 1095 (2d Cir. 1993) ............................................................18

*In re Peanut Corp. of America*,
    407 B.R. 862 (W.D.Va. 2009) ........................................................13

*In re Pharmakinetics Labs., Inc.*,
    139 B.R. 350 (D.Md. 1992) ............................................................14

*In re Pisgah Contractors, Inc*,
    215 B.R. 679 (W.D.N.C. 1995) ......................................................13

*In re RDM Sports Group, Inc.*,
    260 B.R. 915 (N.D.Ga. 2001) ........................................................11

*In re R.I. Lithograph Corp.*,
    60 B.R. 199 (Bankr. D.R.I. 1986) ..............................................13-14

*In re Robin Hood, Inc.*,
    192 B.R. 124 (W.D.N.C. 1995) ..................................................11-12

*In re Titan Energy, Inc.*,
    837 F.2d 325 (8th Cir. 1988) ........................................................13

*In re Unanue-Casal*,
   159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994) ...........................10

*In re Wellington Apartment*,
   353 B.R. 465 (E.D.Va. 2006) .................................................................................13

*Ivester v. Miller*,
   398 B.R. 408 (M.D.N.C. 2008) ................................................................................9

*James v. Jacobson*,
   6 F.3d 233 (4TH Cir. 1993) .................................................................................8-9

*Matter of Pied Piper Casuals, Inc.*,
   65 B.R. 780 (S.D.N.Y. 1986) ...........................................................................13-14

*Peerless Ins. Co. v. Rivera*,
   208 B.R. 313 (D.R.I. 1997) .......................................................................13-14, 17

*Robbins v. Robbins*,
   964 F.2d 342 (4th Cir. 1992) .............................................................................8-10

*Stansbury Poplar Place, Inc. v. Schwartzman*,
   13 F.3d 122 (4th Cir. 1993) ..............................................................................10-11

*U.S. Brass Corp. v. California Union Ins.*,
   110 F.3d 1261 (7th Cir. 1997) .........................................................................13-14

*Westberry v. Gislaved Gummi AB*,
   178 F.3d 257 (4th Cir. 1999) .................................................................................8

**Statutes:**

28 U.S.C. §157(c)(1) ...............................................................................................18

28 U.S.C § 157(e) ....................................................................................................11

28 U.S.C. § 158(a)(1) ................................................................................................1

28 U.S.C. § 362(d)(1) ...............................................................................................9

28 U.S.C. § 1332 .....................................................................................................13

28 U.S.C. § 2201 .....................................................................................................13

Rule 57 of the Federal Rules of Civil Procedure .................................................13

Rule 8009(a) of the Federal Rules of Bankruptcy Procedure ...........................................1

Rule 8010 of the Federal Rules of Bankruptcy Procedure ...............................................1

N.C.G.S. § 58-44-15 .........................................................................................................5

NOW COMES Appellant Harleysville Mutual Insurance Company ("Harleysville"), pursuant to Rules 8009(a) and 8010 of the Federal Rules of Bankruptcy Procedure, and hereby submits its brief on appeal of the Order entered by the Bankruptcy Court for the Western District of North Carolina denying Harleysville's Motion for relief from the automatic stay to initiate an action for declaratory judgment in the United States District Court for the Western District of North Carolina. (Doc. 82).[1]

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

Pursuant to 28 U.S.C. § 158(a)(1), this Court has appellate jurisdiction with respect to Harleysville's appeal of the final Order Denying Relief from Stay entered by the United States Bankruptcy Court for the Western District of North Carolina ("Bankruptcy Court") on the 28TH day of October, 2009 ("Order").

## STATEMENT OF ISSUE PRESENTED AND APPLICABLE STANDARD OF REVIEW

Whether the Order of the Bankruptcy Court should be overturned for an abuse of discretion on its denial of Harleysville Mutual Insurance Company's motion for relief from the automatic stay to pursue its right to a declaratory judgment action against the debtor, The Hammocks, LLC, in the District Court for the Western District of North Carolina for a declaration as to insurance coverage, including a jury trial on all factual issues? This issue encompasses and incorporates all issues previously stated in Harleysville's Designation of Items to be Included in the Record on Appeal and Statement of Issues to be Presented. (Doc. 95).

---

[1] All citations to "Doc." reference docket entries of the Bankruptcy Court for documents that are part of the items designated by the parties on appeal to this Court.

1

## STATEMENT OF THE CASE

This is Harleysville's appeal from an Order of the Bankruptcy Court denying Harleysville's Motion for Relief from the Automatic Stay to Initiate an Action for Declaratory Judgment in the United States District Court for the Western District of North Carolina. A hearing on Harleysville's Motion was conducted on October 21, 2009, and the Bankruptcy Court's Order was entered on October 28, 2009. Harleysville filed its Notice of Appeal on November 26, 2009. The parties to this appeal have filed respective designations of documents to be included in the record on appeal and all such documents have been transmitted to this Court. Harleysville's appeal was docketed by this Court on December 16, 2009, and a due date of January 4, 2010, was set for Harleysville's appeal brief.

## FACTS

### *(1)    Introduction:*

The Hammocks, LLC ("The Hammocks") has filed for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Western District of North Carolina ("Bankruptcy"). (Doc. 1). Harleysville seeks to pursue an action for declaratory judgment in the District Court as to whether coverage exists for a fire loss under a policy of insurance issued by Harleysville to The Hammocks ("Insurance Policy"). (*See* Doc. 68, Ex. 1).[2] The Bankruptcy Court has denied Harleysville relief from the automatic stay imposed by The Hammocks' Bankruptcy to pursue its declaratory judgment action in the United States District Court for the Western District of North Carolina ("District Court"). (Doc. 82). The Bankruptcy Court's Order disregards the fact that Harleysville is a third-party to The Hammocks'

---

[2] Exhibit 1 to "Doc. 68" is Harleysville's Declaratory Judgment Complaint.

2

Bankruptcy and that Harleysville *has not* submitted to the jurisdiction of the Bankruptcy Court. This Order now subjects Harleysville to a substantial risk of waiving its Seventh Amendment right to a jury trial in the District Court on not only its claims against The Hammocks for declaratory relief, but on all claims for monetary relief that The Hammocks has now asserted against Harleysville by way of an Adversary Proceeding initiated on December 2, 2009 in the Bankruptcy Court ("Adversary Proceeding"). (*See* Doc. 116). The Bankruptcy Court's denial has caused further procedural motions by all parties to this insurance dispute which, in turn, has caused further delay to Harleysville's right to pursue a declaratory judgment as to coverage under the Insurance Policy.[3] These issues can be resolved by a reversal of the Bankruptcy Court's Order for the purpose of allowing Harleysville to proceed with its declaratory judgment action in the District Court.

### (2)    *Pre-Bankruptcy:*

In October 2005, The Hammocks purchased property known as The Richmond Hill Inn from the property's previous owner, Richmond Hill, Inc. ("RHI"). (Doc. 68, Ex. 1 ¶ 18). The Hammocks' purchase of the Richmond Hill Inn was financed by an $8.8 million dollar loan from RHI through a promissory note and deed of trust. (Doc. 68, Ex. 1 ¶¶ 20-22). The Hammocks later defaulted on RHI's loan and RHI initiated foreclosure proceedings in November 2008. (Doc. 68, Ex. 1 ¶ 27). As of October 29, 2008, The Hammocks' debt to RHI was purportedly $6,964,703.97. (Doc. 68, Ex. 1 ¶ 26).

---

[3] The Hammocks' Adversary Proceeding has triggered the following procedural motions: (1) Harleysville's Motion to Withdraw Reference as to Adversary Proceeding to proceed to a jury trial in the District Court (Adversary Proceeding Doc. 6); (2) Harleysville's Motion to Stay Adversary Proceeding pending disposition on the Motion to Withdraw Reference (Adversary Proceeding Doc. 8); and (3) a Motion to Transfer in a separate declaratory judgment action entitled *Harleysville Mutual Insurance Company v. Richmond Hill Inn, Inc.* pending in this Court bearing civil action number 1:09-cv-0037 (which is Docket Entry No. 17 in such action).

On March 16, 2009, RHI filed a Notice of Trustee's Foreclosure Sale of Real Property with the Superior Court Division of Buncombe County, and the property was scheduled for sale on April 11, 2009. (Doc. 68, Ex. 1 ¶ 28). While RHI's foreclosure proceedings were ongoing, a fire was set at the Richmond Hill Inn on March 19, 2009, which destroyed the main building commonly known as "the Mansion" ("Fire Loss"). (Doc. 68, Ex. 1 ¶¶ 13-14). On the same day, The Hammocks notified Harleysville of the Fire Loss. (Doc. 68, Ex. 1 ¶ 36). The Asheville Buncombe Arson Task Force eventually concluded the Fire Loss was incendiary in nature. (Doc. 68, Ex. 1 ¶ 31).

### (3)    *The Hammocks' Proof of Loss and Harleysville's Investigation:*

Within days of The Hammocks' Fire Loss, The Hammocks filed a voluntary petition for bankruptcy relief pursuant to Chapter 11 of the United States Bankruptcy Code on March 25, 2009 ("Petition"). (Doc. 68, Ex. 1 ¶ 29). Harleysville *was not* listed as a creditor in The Hammocks' Bankruptcy and the Insurance Policy *was not* listed as an asset of The Hammocks' bankruptcy estate. (Doc. 1, 10). After The Hammocks' Petition, Harleysville notified The Hammocks that it was investigating the Fire Loss pursuant to a Reservation of Rights to deny coverage and requested that The Hammocks submit a Sworn Statement in Proof of Loss ("Proof of Loss") and appoint a representative to submit to an Examination Under Oath ("EUO"). (Doc. 68, Ex. 1 ¶ 37).

The Hammocks then retained Attorney Ronald Payne ("Attorney Payne") who was approved by the Bankruptcy Court to represent The Hammocks with respect to its Fire Loss claim. (Doc. 14, 31). On May 29, 2009, Attorney Payne submitted to Harleysville a purported Proof of Loss on behalf of The Hammocks which was signed by Dr. William Gray as The Hammocks' representative. (Doc. 68, Ex. 1 ¶¶ 38-39).

4

On June 10, 2009, Harleysville conducted the EUO of Dr. William Gray who was the designated representative of The Hammocks. (Doc. 68, Ex. 1 ¶ 40). After conducting The Hammocks' EUO, and after conducting an investigation of The Hammocks' Fire Loss claim, Harleysville took the position that The Hammocks made material misrepresentations in its application for insurance (and, accordingly, Harleysville refunded all premiums paid), that The Hammocks made material misrepresentations in its claim for insurance proceeds, and that the Hammocks (through its authorized agent(s)) intentionally burned the property.

### *(4)*     *Harleysville's Motion for Relief from the Automatic Stay:*

As a precautionary measure, and out of respect for the automatic stay imposed by The Hammocks' Bankruptcy, on October 5, 2009, Harleysville filed its Motion for Relief from the Automatic Stay with the Bankruptcy Court to allow Harleysville to pursue a declaratory judgment action in the District Court for a determination of whether coverage exists for The Hammocks' Fire Loss claim under the Insurance Policy. (Doc. 68). Harleysville attached to its Motion the Declaratory Judgment Complaint that Harleysville intended to file in the District Court. (Doc. 68, Ex. 1). Harleysville's proposed Declaratory Judgment Complaint detailed the grounds for its position that the Insurance Policy does not cover The Hammocks' Fire Loss, including that The Hammocks (1) committed arson, (2) made material misrepresentations in the presentation of its Fire Loss claim to Harleysville, (3) made material misrepresentations in the completion of the application for the Insurance Policy, and (4) is statutorily barred from coverage under North Carolina state law (N.C.G.S. § 58-44-15). (*See* Doc. 68, Exhibit 1 ¶¶ 48-115). Harleysville's proposed Declaratory Judgment Complaint further requested a jury trial. (Doc. 68).

The Hammocks filed a response to Harleysville's Motion for Relief from the Automatic Stay asserting that (1) it was premature in that Harleysville had not denied The Hammocks' Fire Loss claim, and (2) that Harleysville's declaratory judgment action would be "duplicative" of any action filed by The Hammocks (which it had not yet filed). (Doc. 72, ¶¶ 7-8).

A hearing on Harleysville's Motion was conducted before the Honorable George R. Hodges on October 21, 2009. After hearing arguments of counsel, Judge Hodges concluded as follows: "I will continue this hearing until January 20TH. If by then the debtor has filed its complaint, I will deny [Harleysville's] motion. If the debtor hasn't filed its complaint by then, I will grant [Harleysville's] motion." (Hearing Transcript p. 18).[4] Judge Hodges requested that counsel for The Hammocks prepare the Order. (Hearing Transcript p. 19). On October 28, 2009, rather than a continuance of the matter, an Order was entered by the Bankruptcy Court which contained specific findings of fact and conclusions of law and denied Harleysville's Motion on the grounds that (1) The Hammocks' Fire Loss "claim is an asset of the Chapter 11 Estate and the prosecution of . . . that claim is a core matter", (2) Harleysville had not formally denied The Hammocks' Fire Loss claim, but that Harleysville's actions "shall be considered a deemed denial . . . allowing [The Hammocks] to proceed with its filing of the civil action", and (3) "judicial economy and efficiency dictate that only one civil action should be filed . . . and that it should be filed by the debtor-in-possession as plaintiff with the insurance company, as defendant, raising any defenses that it deems appropriate". (Doc. 82). Harleysville has objected to the Bankruptcy Court's Order by way of its timely appeal of the Order to this Court. (Doc. 86).

---

[4] "Hearing Transcript" refers to the transcript of the hearing conducted on October 21, 2009, which has been filed with this Court as part of the designated items on appeal.

**(5)    *RHI Action:***

Harleysville has filed a separate declaratory judgment action against RHI in the District Court for a determination as to whether RHI is a mortgagee under the Insurance Policy and, therefore, is insured with respect to its mortgage interest in The Richmond Hill Inn property ("*RHI Action*"). (*See Harleysville Mutual Insurance Company v. Richmond Hill, Inc.*; 1:09cv377 – Doc. 1). Harleysville's *RHI Action* is separate and apart from Harleysville's proposed declaratory judgment action against The Hammocks, and by way of briefs submitted by the parties in the *RHI Action,* the parties agree that the automatic stay of The Hammocks' bankruptcy does *not* affect Harleysville's *RHI Action*. (*RHI Action* Doc. 11; Doc. 14, p. 1; Doc. 15, p.3). However, RHI has filed a motion to transfer the *RHI Action* to consolidate it with The Hammocks' Adversary Proceeding in the Bankruptcy Court and Harleysville has filed a response opposing a transfer of the *RHI Action* to Bankruptcy Court. (*RHI Action* Doc. 17, 19). RHI has also filed an answer in the *RHI Action* along with counterclaims which seek monetary damages against Harleysville. (*RHI Action* Doc. 16). Harleysville has answered and denied RHI's claims for monetary relief with a request for a jury trial. (*RHI Action* Doc. 20).

**(6)    *The Hammocks' Adversary Proceeding:***

On December 2, 2009, The Hammocks initiated an Adversary Proceeding by filing a complaint against Harleysville in the Bankruptcy Court alleging claims of breach of contract, bad faith, and unfair and deceptive trade practices. (Doc. 116). In the Adversary Proceeding, The Hammocks seeks to recover compensatory damages from Harleysville in the amount of "$6,021,563.00 together with interest" for breach of contract along with extra-contractual damages for alleged bad faith and unfair and deceptive trade practices. (Doc. 116). In response,

Harleysville has been forced to (1) file a motion requesting that the District Court's bankruptcy reference be withdrawn with respect to The Hammocks' Adversary Proceeding and (2) file a motion to stay the Adversary Proceeding pending the District Court's order on Harleysville's motion to withdraw the bankruptcy reference.[5] (Adversary Proceeding Doc. 6-8).[6]

## LEGAL ANALYSIS

Harleysville has appealed the Bankruptcy Court's denial of relief from the automatic stay. (Doc. 86). As a result of the Bankruptcy Court's Order, Harleysville is barred from its right to pursue a declaratory judgment action in the District Court for a determination as to whether coverage exists under the Insurance Policy for The Hammocks' Fire Loss. It is understood that the Bankruptcy Court's decision to deny relief from the automatic stay is discretionary but it can be overturned for an abuse of discretion. *Robbins v. Robbins,* 964 F.2d 342, 345 (4TH Cir. 1992). To the extent that abuse of discretion conjures up images of opprobrious conduct, it is a misnomer. Generally speaking, abuse of discretion occurs when a court ignores important and relevant factors in making its decision, considers improper factors, or errs in balancing factors that were properly considered. *See Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4TH Cir. 1999) (even if court "applies the correct legal principles to adequately supported facts," a reviewing court is obliged to reverse if the "court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."); *James v. Jacobson,* 6 F.3d 233, 239 (4TH Cir. 1993) (abuse of discretion can

---

[5] Harleysville's motion to stay the Adversary Proceeding is scheduled for hearing on January 20, 2010.

[6] Harleysville has filed its Motion to Withdraw Reference and supporting brief, and its Motion to Stay Adversary Proceeding with this Court on appeal by way of a Notice of Filing docketed as "Document 10" in this appeal.

occur in various ways, including (1) "failure to take into account judicially recognized factors constraining its exercise" and (2) by exercise of discretion "that is flawed by erroneous factual or legal premises").

28 U.S.C. § 362(d)(1) permits a "party in interest" to obtain relief from the Bankruptcy Code's automatic stay provision "for cause." The term "cause" is recognized as a flexible term that is not defined by the statute but can be found only by reviewing the totality of the circumstances on a case-by-case balancing test. *Claughton v. Mixson,* 33 F.3d 4, 5 (4TH Cir. 1994); *Ivester v. Miller,* 398 B.R. 408, 425 (M.D.N.C. 2008). The Fourth Circuit has made it clear that a stay must be justified by ***"clear and convincing circumstances" that outweigh "potential harm to the party against whom [the stay] is operative."*** *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1003 (4TH Cir. 1986); *see also Robbins v. Robbins,* 964 F.2d 342, 345 (4TH Cir. 1992) (a court "must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied"); *In re Joyner*, 416 B.R. 190, 192 (M.D.N.C. 2009) (following *Robbins'* balancing test).

In denying Harleysville's motion for relief from the automatic stay, the Bankruptcy Court's Order ignored this balancing test in favor of simply siding with The Hammocks' position that it should have the primary right to pursue a cause of action against Harleysville in a forum of The Hammocks' choice. Such a unilateral conclusion fails to balance any rights of Harleysville with those of The Hammocks, it fails to take into account the fact that Harleysville's declaratory judgment action involves only North Carolina state law, it fails to consider the creditors' interests in an expeditious determination of coverage for the Fire Loss, and it is contrary to a fair

9

and effective administration of justice for ***all*** parties involved in this insurance coverage dispute.[7]
Therefore, the Order should be reversed to allow Harleysville its right to proceed with its
declaratory judgment action in the District Court.

> **(1)** ***Harleysville's Action is Grounded in North Carolina State Law and Harm Will
> Result to Harleysville if Relief is Not Granted for Harleysville to Pursue its
> Action in District Court.***

The harm caused to Harleysville has become clear with the filing of The Hammocks'
Adversary Proceeding. Subsequent to the Bankruptcy Court's Order denying Harleysville relief
from the automatic stay, The Hammocks initiated its Adversary Proceeding against Harleysville
in the Bankruptcy Court requesting monetary damages on claims for breach of contract, bad
faith, and unfair and deceptive trade practices. (Doc. 116). Harleysville has a Seventh
Amendment right to a jury trial on these claims. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S.
33, 40-49, 109 S.Ct. 2782, 2789-95 (1989) (a right to jury trial attaches to legal actions seeking
to recover monetary damages); *Stansbury Poplar Place, Inc. v. Schwartzman,* 13 F.3d 122, 125

---

[7] Courts have identified a broad number of factors to be considered in making a determination
whether "cause" exists to grant relief from the automatic stay. *See In re Unanue-Casal,* 159 B.R.
90, 95-96 (D.P.R. 1993), *aff'd,* 23 F.3d 395 (1ST Cir. 1994) (listing twelve factors). The Fourth
Circuit has focused on factors that include (1) whether the issues in the pending litigation involve
only state law, (2) whether modification of the stay will promote judicial economy, and (3)
whether the estate can be protected properly by a requirement that creditors seek enforcement of
any judgment through the bankruptcy court. *Robbins,* 964 F.2d at 345. The first and second
factors are discussed by Harleysville below. The third factor is inapplicable in this case because
Harleysville is not a creditor in the Bankruptcy and its declaratory judgment action would not
result in a monetary award against The Hammocks. The Fourth Circuit is certain that the
balancing test must be conducted on a case-by-case basis. *Id.* For this reason, Harleysville also
discusses the factors of harm to Harleysville if the stay *is not* lifted, no harm will result to The
Hammocks if the stay *is* lifted, and no harm to the interests of creditors if the stay *is* lifted.

(4TH Cir. 1993) (citing *Granfinanciera* and holding Seventh Amendment jury trial right attaches to actions seeking monetary damages).[8]

Harleysville has not submitted a proof of claim in The Hammocks' bankruptcy proceeding and it has neither subjected itself to the Bankruptcy Court's jurisdiction nor waived its right to a jury trial. The Bankruptcy Court cannot conduct a jury trial without the consent of all parties. 28 U.S.C § 157(e). Harleysville does not consent and prefers a jury trial to take place in the District Court. Because Harleysville has been denied relief from stay to pursue its action in the District Court, it is now forced to expend significant efforts to protect its right to a jury trial in the District Court by (1) filing a motion for withdrawal of the District Court's reference to the Bankruptcy Court, and (2) filing a motion to stay the Adversary Proceeding pending an order on Harleysville's motion to withdraw the reference.

Harleysville now has its proverbial "back against the wall". If Harleysville files a counterclaim against The Hammocks in the Adversary Proceeding it submits to the jurisdiction of the Bankruptcy Court and waives its right to a jury trial on all claims – including Harleysville's claim for declaratory relief. *See In re Robin Hood, Inc.,* 192 B.R. 124, 128 (W.D.N.C. 1995) (where debtor files an adversary proceeding against a creditor that has not filed

---

[8] *See also Billing v. Ravin, Greenberg & Zackin*, 22 F.3d 1242 (3RD Cir. 1994) (for purposes of determining right to jury trial, action for money damages based on breach of contract is traditionally a legal, rather than equitable, claim); *In re RDM Sports Group, Inc.,* 260 B.R. 915 (N.D.Ga. 2001) (where action is simply for recovery of a money judgment, the action is one at law, for purposes of determining party's right to jury trial); *In re EZ Pay Services, Inc.,* 389 B.R. 278 (Bankr. M.D.Fla. 2008) (actions seeking monetary relief are generally legal in nature and therefore triable by jury under Seventh Amendment); *Debaillon .v Steffes,* 195 B.R. 362 (M.D.La. 1996) (Suits seeking monetary damages are unquestionably legal in nature, for purposes of determining whether Seventh Amendment right to jury trial applies); *In re Mathews,* 203 B.R. 152 (Bankr. D.Minn. 1996) (in determining plaintiff's right to trial by jury, if plaintiff prays for simply the recovery and possession of specific real or personal property, or for the recovery of money judgment, the action is one at law to which the right to jury trial attaches); *In re Lands End Leasing, Inc.,* 193 B.R. 426 (Bankr. D.N.J. 1996) (where action is for recovery of money judgment, it is unquestionably legal, entitling parties to jury trial).

Case 1:09-cv-00411-MR   Document 11   Filed 01/04/10   Page 17 of 27

a proof of claim and that creditor then files a counterclaim, that creditor has succumbed to the jurisdiction of the bankruptcy court and waived its right to a jury trial); *In re Hudson,* 170 B.R. 868, 873 (E.D.N.C. 1994) (same). The notion of a fair administration of justice is defeated by this procedure.

The proper procedure and more logical course is to allow Harleysville relief from the stay to file its declaratory judgment action in the District Court. The Hammocks would then be able to assert its claims against Harleysville by way of counterclaim in the District Court with Harleysville's right to a jury trial preserved. It is extremely prejudicial to force Harleysville to forego a declaratory judgment action to determine its rights and obligations under the Insurance Policy so that The Hammocks would (1) have a first right of action against Harleysville, and (2) force Harleysville to submit to the jurisdiction of the Bankruptcy Court and thereby waive its right to a jury trial. Harleysville's pursuit of a declaratory judgment action in an expeditious manner in the first instance should be taken as an act of good faith and fair dealing. By denying Harleysville relief from the automatic stay, the Bankruptcy Court's Order has exposed Harleysville to an action for bad faith and unfair and deceptive trade practices in the bankruptcy forum that risks Harleysville's rights to a jury trial. Such a procedure should not be upheld.

The Bankruptcy Court's refusal to lift the stay further prejudices Harleysville by requiring it to litigate the coverage question in the context of a lawsuit in which it is a defendant when Harleysville has every right to initiate the coverage suit first as a plaintiff with The Hammocks as a defendant. Logically the automatic stay "should not tie the hands of a defendant while the plaintiff debtor is given free rein to litigate." *In re Merrick,* 175 B.R. 333, 337-38 (9TH Cir. B.A.P. 1994); *accord In re Clowser,* 39 B.R. 883, 886 (Bankr. E.D.Va. 1984) ("Although

section 362 is a shield to protect the debtor to provide for a 'fresh start,' the automatic stay was not intended by Congress to be used as a sword").

The Hammocks is now using the stay to permit its subsequent Adversary Proceeding to proceed in the Bankruptcy Court while Harleysville is currently stayed from proceeding on its action in the District Court which would have proper jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 2201 and Fed.R.Civ.P. 57 (relating to declaratory judgments). The question of insurance coverage in this case is a matter of North Carolina insurance contract law and bears no relationship to federal bankruptcy law. *See Continental Cas. Co. v. Physicians Weight Loss Centers of America, Inc.,* 61 Fed.Appx. 841, 844 (2003) (the general rule in North Carolina is "that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation"); *Fortune Ins. Co. v. Owens,* 351 N.C. 424, 428, 526 S.E.2d 463, 465-66 (2000) (same). A non-core matter does not depend on bankruptcy law for its existence and, therefore, it can "proceed in another court" outside of the bankruptcy court. *In re Peanut Corp. of America,* 407 B.R. 862, 865 (W.D.Va. 2009); *see also In re Wellington Apartment,* 353 B.R. 465 (E.D.Va. 2006) ("[core proceedings] have been described as 'those proceedings that would not exist in law absent the Bankruptcy Code'"). In fact, a bankruptcy judge cannot adjudicate state law contractual claims arising out of a pre-petition contract involving a party who has not filed a claim in the bankruptcy proceeding. *In re Apex Exp. Corp.,* 190 F.3d 624, 631-33 (4TH Cir. 1999); *In re Pisgah Contractors, Inc.,* 215 B.R. 679, 681 (W.D.N.C. 1995).[9] For this reason, bankruptcy

---

[9] Courts outside this Circuit agree. *See In re Titan Energy, Inc.,* 837 F.2d 325, 329-30 (8TH Cir. 1988) (holding that bankruptcy court should have abstained from hearing insurer's "non-core" action which sought rescission of insurance policies and declaratory judgment as to scope of coverage); *U.S. Brass Corp. v. California Union Ins.,* 110 F.3d 1261 (7TH Cir. 1997) (holding that proceedings brought for determination of coverage provided by debtor's insurance policies

courts routinely lift the automatic stay to permit adjudication of non-core proceedings and, in particular, insurance coverage actions. *Peerless Ins. Co. v. Rivera,* 208 B.R. 313, 314 (D.R.I. 1997) (granting insurer's motion for relief from automatic stay to proceed with declaratory judgment action regarding insurance coverage dispute); *In re Burger Boys, Inc.,* 183 B.R. 682, 688-89 (S.D.N.Y. 1994) (affirming grant of relief from stay which allowed a state court action to proceed where state-law claims at issue were non-core); *In re Pharmakinetics Labs., Inc.,* 139 B.R. 350, 353 (D.Md. 1992) (lifting automatic stay with respect to the scope of the debtor's insurance coverage); *In re Glen Ivy Resorts, Inc.,* 171 B.R. 98, 100 (Bankr. C.D. Cal. 1994) (discussing an earlier grant of relief from stay to allow an insurer to commence a "non-core" declaratory relief action in state court to determine insurance coverage). The Bankruptcy Court failed to recognize Harleysville's declaratory judgment action as a non-core proceeding, and the prejudice now experienced by Harleysville could have been avoided by granting relief from the automatic stay to allow Harleysville its right to pursue its declaratory judgment action in the District Court.

---

were non-core proceedings); *Matter of Pied Piper Casuals, Inc.,* 65 B.R. 780, 781 (S.D.N.Y. 1986) (holding that trustee's adversary proceeding concerning insurance coverage was non-core where "a duty to pay – indeed coverage – under the instant policy is sharply contested, the contrary of a recognition of any duty to pay . . . and far from a mature obligation payable on demand.") (citation omitted); *In re Molten Metal Tech., Inc.,* 271 B.R. 711, 714-15 (Bankr. D.Mass. 2002) (trustee's action seeking declaration of rights under pre-petition insurance policy did not arise under the Bankruptcy Code and was not a core proceeding); *In re G-I Holdings, Inc.,* 278 B.R. 376, 381 (Bankr. D.N.J. 2002) (holding that insurance coverage action was non-core and stating that an environmental coverage action under pre-petition insurance policies "does not invoke a substantive right provided by title 11," and that such a "proceeding also need not have arisen in a chapter 11 case"); *In re R.I. Lithograph Corp.,* 60 B.R. 199, 203 (Bankr. D.R.I. 1986) ("we are unable to agree that [the insured's] action against [the insurer] seeking reimbursement and/or indemnification for losses allegedly covered under a contract of insurance is a core proceeding.").

14

**(2)** ***There Will Be No Harm to The Hammocks If Harleysville Is Granted Relief from the Stay to Pursue Its Declaratory Judgment Action in the District Court.***

There will be no harm to The Hammocks if Harleysville's declaratory judgment action is allowed to proceed in the District Court.  Soon after The Hammocks filed its Bankruptcy Petition, Attorney Payne was retained by The Hammocks to represent The Hammocks with respect to its Fire Loss claim.  (Doc. 14, 31).  Attorney Payne's representation of The Hammocks was separate and apart from the Bankruptcy proceeding in which The Hammocks has separate counsel.  Harleysville's EUO of The Hammocks was conducted outside of the Bankruptcy proceeding without objection from any party.  The Hammocks did not list Harleysville as a creditor nor did it list the Insurance Policy as an asset of the Bankruptcy estate.  All activity with respect to The Hammocks' Fire Loss claim took place outside of the Bankruptcy without objection until Harleysville sought to exercise its right to pursue its declaratory judgment action in the District Court.  The Hammocks cannot now in good faith contend that it would be prejudiced by a declaratory judgment action initiated by Harleysville (which is not a party to the Bankruptcy proceeding) in the District Court for a declaration as to coverage under an Insurance Policy that is not listed as an asset of the Bankruptcy estate.

The primary ground for The Hammocks' objection to Harleysville's motion appears to be that Harleysville did not "actually" deny The Hammocks' Fire Loss claim and then allow The Hammocks the first right to purse an action against Harleysville.  [Doc. 72, ¶6].  In essence, The Hammocks' argument is that Harleysville should not be allowed to pursue its right to obtain a declaration of coverage in a timely manner in a court of appropriate jurisdiction without first allowing The Hammocks to file an action against Harleysville.  Harleysville is unaware of any law that bars an insurer from initiating an action against its insured for a declaration as to coverage.  The Hammocks' objection to a relief from stay is not grounded in law.  Its objection is

simply based on The Hammocks' strategy to be a plaintiff in an action for breach of contract, bad faith, and unfair and deceptive trade practices against Harleysville in the Bankruptcy Court and The Hammocks' strategy would be lost if the stay were lifted in favor of Harleysville's right to pursue its declaratory judgment action in the District Court.[10] The automatic stay should not be used to promote the strategic goals of The Hammocks at the expense of Harleysville – a third party to the Bankruptcy.

The Hammocks also argued to the Bankruptcy Court that Harleysville's declaratory judgment action "would be duplicative to the action filed by the debtor-in-possession . . . and potentially require two trials on the same issues which would be costly and not in the interest of judicial economy." [Doc. 72, ¶8]. This argument has no support. There would not have been two separate actions if Harleysville had been allowed relief from the automatic stay to pursue its coverage action in the District Court. The Hammocks would have simply filed its action against Harleysville as a compulsory counterclaim in the District Court for a resolution of all claims in a single action. However, because Harleysville was not granted relief from the stay, a procedural quagmire has occurred. The Hammocks has filed an Adversary Proceeding for monetary damages against Harleysville in the Bankruptcy proceeding. (Doc. 116). This in turn has caused further motions and litigation to occur with respect to Harleysville's right to proceed with a jury trial in the District Court and to stay the Adversary Proceeding until an order is entered with respect to such right. (Adversary Proceeding Doc. 6, 7, 8). The Bankruptcy Court's denial of

---

[10] At the hearing on its Motion, Harleysville explained to the Bankruptcy Court that time was of the essence with respect to its action and, for this reason, rather than waiting on a potential action to be filed by The Hammocks sometime in the future, the better course was to allow Harleysville's action to proceed now while the evidence is "fresh" and individuals with relevant knowledge are available. (Transcript pp. 6-7). The Bankruptcy Court recognized this concern by placing a deadline on The Hammocks' action, but denied Harleysville its right to pursue its action for declaratory judgment as a plaintiff in the District Court. (*See* Doc. 82).

the stay has created litigation and further delay of proceedings that would not have occurred if Harleysville would have been allowed relief from the stay to pursue its declaratory judgment action in the District Court.

Harleysville's declaratory judgment action is to determine the rights and obligations of Harleysville under the Insurance Policy for The Hammocks' Fire Loss claim. The Hammocks does not lose anything of substance by allowing Harleysville's action to proceed in the District Court. However, the Bankruptcy Court's denial of relief for Harleysville from the automatic stay has jeopardized Harleysville's right to proceed to a jury trial on its action in the District Court. Therefore, the Bankruptcy Court's Order should be reversed and Harleysville should be allowed the relief it seeks from the automatic stay in The Hammocks' bankruptcy to proceed with its declaratory judgment action in the District Court.

### (3) *There will be No Harm to Creditors If Harleysville Is Granted Relief from Stay.*

Granting Harleysville relief from the automatic stay will not adversely impact creditors to The Hammocks' Bankruptcy. The creditors also have an interest in ensuring that the coverage issues raised in Harleysville's declaratory judgment action are resolved as efficiently as possible. Moreover, the creditors' interests are not affected by the court in which a coverage action is litigated (*i.e.* District Court *vs.* Bankruptcy Court). *See Peerless Insurance Company v. Rivera*, 208 B.R. 313, 317 (D.R.I. 1997) (holding interests of creditors, in general, were not affected by where litigation of coverage took place but rather how the coverage question was decided). At the hearing on Harleysville's motion for relief from the automatic stay, RHI, the largest creditor in the Bankruptcy, stated only that it supported "the debtor on this issue". (Hearing Transcript p. 13). RHI has subsequently filed a motion to transfer the *RHI Action* to be consolidated with The Hammocks' Adversary Proceeding currently pending in the Bankruptcy Court. (*RHI Action*

*Doc.* 17, 19). However, the *RHI Action* is currently pending in the District Court and RHI agrees the automatic stay of The Hammocks' Bankruptcy does not affect the *RHI Action.* (*RHI Action* Doc. 14, p. 1). RHI has not articulated how its rights as a creditor will be substantively affected if Harleysville is allowed to proceed with its action in the District Court rather than the Bankruptcy Court.

The adjudication of all issues as to the Insurance Policy, including the *RHI Action* and Harleysville's declaratory judgment action, must occur at some juncture. Allowing Harleysville's declaratory judgment action to occur in the District Court ensures that *all* issues as to the Insurance Policy will be determined by the District Court while protecting Harleysville's right to a jury trial on all issues.

### (4)    *Judicial Economy and Efficiency will be Advanced in the District Court.*

Notwithstanding the jeopardy posed to Harleysville's right to a jury trial in the District Court, certain judicial efficiencies would be lost if the Bankruptcy Court were allowed to proceed with Harleysville's declaratory judgment action. As discussed above, Harleysville's declaratory judgment action is a non-core proceeding. Though the bankruptcy court could issue proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1), such proposed findings and conclusions would be subject to *de novo* review by the District Court. This would result in an inefficient duplication of efforts by two courts and cause further cost and delay to all parties involved. *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir. 1993) ("the fact that a bankruptcy court's determination on non-core matters is subject to *de novo* review by the district court could lead the latter to conclude that in a given case unnecessary costs could be avoided by a single proceeding in the district court"); *In re Almac's, Inc.,* 202 B.R. 648, 659 (D.R.I. 1996) (withdrawing reference to avoid the waste of judicial resources that would result from a *de novo*

review of bankruptcy court's findings); *In re Coe-Truman Tech, Inc.,* 214 B.R. 183, 187 (N.D.Ill. 1997) (where bankruptcy court's decision is subject to *de novo* review, it is a more efficient use of judicial resources to decide the case in the district court).

The District Court is the proper court to determine all issues as to the Insurance Policy under North Carolina law in the first instance, and, if coverage exists, then the Bankruptcy Court would then be the proper court to govern how the insurance proceeds should be distributed pursuant to bankruptcy law. Allowing all matters relating to the Insurance Policy to proceed in the District Court would (1) protect Harleysville's Seventh Amendment right to a jury trial, (2) ensure that all matters relating to the Insurance Policy were conducted in a single forum – the District Court, and (3) allow the District Court to gain valuable familiarity with the issues relating to the Insurance Policy that could assist it leading up to and through trial. Therefore, the proper and most efficient manner is to allow Harleysville relief from the automatic stay to proceed with its declaratory judgment action in the District Court.

## CONCLUSION

For the foregoing reasons, this Court should reverse the Bankruptcy Court's Order Denying Relief from Stay and allow Harleysville to pursue its declaratory judgment action in this Court.

Dated: January 4, 2010

/s/ David L. Brown
David L. Brown
N.C. State Bar No. 18942
dbrown@pckb-law.com
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRS & BROWN, PLCC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409

Michael R. Nelson
Pa. State Bar No. 65679
NELSON, LEVINE, DE LUCA & HORST
518 East Township Line Road
Suite 300
Blue Bell, PA 19422

Douglas Y. Christian
Pa. State Bar No. 41934
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

*Attorneys for Harleysville Mutual Insurance
Company*

20

## CERTIFICATE OF SERVICE

The undersigned certifies that the document to which this Certificate is affixed was served upon the party(s) to this action by means of the Electronic Filing System of the Court on January 4, 2010.

/s/ Brady A. Yntema
Brady A. Yntema
N.C. State Bar No. 25771
byntema@pckb-law.com
PINTO COATES KYRE & BROWN, PLLC
3203 Brassfield Road
Greensboro, NC 27410
Telephone: 336.282.8848
Facsimile: 336.282.8409
*Attorney for Harleysville Mutual Insurance Company*

21