IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | 1:09-CV-00411-MR |
| | ) | |
| THE HAMMOCKS, LLC d/b/a | ) | MOTION TO DISMISS THE APPEAL |
| Richmond Hill Inn, | ) | AS MOOT |
| | ) | |
| Debtor. | ) | |

___

The Chapter 11 Estate/Debtor-in-Possession/Appellee moves the Court, alleges and says:

1. The Bankruptcy Court entered an order on October 28, 2009 that provided time for the Chapter 11 Estate/debtor-in-possession to file its civil action after considering relief from stay for the movant, Harleysville Mutual Insurance Company, the appellant.

2. Harleysville Mutual Insurance Company filed the relief from stay motion with the Bankruptcy Court. It solicited the jurisdiction of the Bankruptcy Court to obtain permission to file a declaratory judgment action before the Chapter 11 Estate/debtor-in-possession could file its adversary proceeding. The Bankruptcy Court, based on the motion, response filed and arguments, declined to allow relief from stay at that time.

3. The order reflects granting relief from stay to Harleysville Mutual Insurance Company if the Chapter 11 Estate/debtor-in-possession did not file its adversary proceeding by a certain date, January 20, 2010.

4. The Chapter 11 Estate/debtor-in-possession did file its adversary proceeding on December 2, 2009, within the designated time period, and served it on Harleysville Mutual Insurance Company, satisfying the Bankruptcy Court order.

5. Harleysville Mutual Insurance Company is entitled to a jury trial in the adversary proceeding filed by the Chapter 11 Estate/debtor-in-possession, pursuant to 28 USC §157. The jury trial will be conducted in the United States District Court (unless Harleysville Mutual Insurance Company consents to the Bankruptcy Court conducting a jury trial). See *In re Stansbury Poplar Place Incorporated, 13 F.3d 122 (1993)* which appears to be right on point in this matter.

6. There is no need for a separate declaratory judgment action; all issues pertinent to Harleysville Mutual Insurance Company can be raised in the adversary proceeding by Harleysville Mutual Insurance Company's Answer to it.

7. Judicial economy would require that one civil action be filed in this matter, it has been filed and is pending before the Court.

8. These actions render the appeal of Harleysville Mutual Insurance Company and its concern about its jury trial rights moot.

9. Harleysville Mutual Insurance Company can, by its Answer, request a jury trial in the adversary proceeding which invokes the jurisdiction of the United States District Court and it can, in that pending adversary proceeding, raise any and all issues that it may have desired to raise in a separate declaratory judgment action in the adversary proceeding/civil action now pending without the waste of two separate civil actions trying the same case.

10. Harleysville Mutual Insurance Company's appeal is moot and should be dismissed.

THEREFORE, the Chapter 11 Estate/Debtor-in-Possession/Appellee respectfully moves the Court as follows:

1. To dismiss the appeal as moot.

2. For other appropriate relief.

This 20th day of January, 2010.

/s/ David G. Gray
_____
David G. Gray, Attorney
for Chapter 11 Estate/D.I.P./Appellee
N. C. State Bar No. 1733

**WESTALL, GRAY, CONNOLLY & DAVIS, P.A.**
**81 Central Avenue**
**Asheville, North Carolina 28801**
**Tel: (828) 254-6315**
**Fax: (828) 255-0305**

* * * * * * * * * * * * * * * *

The undersigned certifies that copy of the foregoing has this day been served as electronically filed on the following:

| | |
|---|---|
| **David L. Brown** | dbrown@pckb-law.com |
| **Brady A. Yntema** | byntema@pckb-law.com |
| **Michael R. Nelson** | mnelson@nldhlaw.com |
| **Douglas Y. Christian** | christiand@ballardspahr.com |

**Attorneys for Harleysville Mutual Insurance Company**

This the 20th day of January, 2010.

*/s/ David G. Gray*

**David G. Gray, Attorney**

## 13 F.3d 122

## 62 USLW 2449, 25 Bankr.Ct.Dec. 95, Bankr. L. Rep. P 75,636

**In re STANSBURY POPLAR PLACE, INCORPORATED; In re Stansbury Timonium, Incorporated; In re Stansbury 40 West, Incorporated; In re Stansbury Perry Hall, Incorporated; In re International Electric World Limited Partnership, Debtors. OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on Behalf of the ESTATE OF STANSBURY POPLAR PLACE, INCORPORATED, Stansbury Timonium, Incorporated, Stansbury 40 West, Incorporated, Stansbury Perry Hall, Incorporated, and International Electronic World Limited Partnership, Plaintiff-Appellee,**
v.
**Milton SCHWARTZMAN; Mildred Schwartzman; Jeffrey V. Edgeworth; William Edgeworth; Robert Wiley; Dale Bennett; James Disney; Joan E. Knopp; Anthony Naglieri; Charlene Naglieri; Gary Berkey; Mitch Poist; Walter R. Fraizer; Thomas Hopkins; Blanche Elgert, Defendants-Appellants.**

No. 93-1363.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 1993.
Decided Dec. 27, 1993.

Page 123

Aron Uri Raskas, Kramon & Graham, P.A., Baltimore, MD, argued (Andrew Jay Graham, Kramon & Graham, P.A., on the brief), for defendants-appellants.

Jay Alan Shulman, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD argued (Alan Jay Belsky, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on the brief), for plaintiff-appellee.

Before WILKINS and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

OPINION

WILLIAMS, Circuit Judge:

In October 1990, Stansbury Poplar Place, Inc., Stansbury Timonium, Inc.,

Stansbury 40 West, Inc., Stansbury Perry Hall, Inc., and International Electronic World Limited Partnership, (the debtors) each filed for relief under Chapter 11 of the United States Bankruptcy Code. In November 1990, the United States Trustee appointed the Official Committee of Unsecured Creditors (the Committee) as the party responsible for all the unsecured creditors in the five Stansbury related estates. In October 1992, the bankruptcy court authorized the Committee to commence actions to recover fraudulent conveyances, preferential transfers, and other claims against several of the officers, directors, insiders and shareholders of the debtors (collectively referred to as Appellants). Appellants answered the complaints and filed demands for jury trials. Appellants then filed motions in the district court to withdraw the order of reference to the bankruptcy court on the ground that the bankruptcy court could not conduct the jury trials to which they were entitled.

This is an interlocutory appeal of the district court's denial of Appellants' motion to withdraw the order of reference to the bankruptcy court. [1] Appellants contend that they have a Seventh Amendment right to a jury trial on the Committee's fraudulent conveyance actions against them, that the bankruptcy court does not have the authority to conduct a jury trial, and, therefore, that the order of reference should be withdrawn immediately.

The Committee, on the other hand, contends that because it requested an equitable

Page 124

accounting as well as actions at law, Appellants are not entitled to a jury trial. It also contends that the bankruptcy court has the authority to conduct a jury trial. However, even if the bankruptcy court could not conduct a jury trial, the Committee believes that court is better able to address the equitable accounting claim and other pre-trial matters, and therefore, the order of reference should not be withdrawn immediately.

We agree that Appellants have a right to a jury trial and that the bankruptcy court does not have the authority to conduct jury trials. This holding, however, does not require that the order of reference be withdrawn immediately. Therefore, we remand for the district court to determine whether to delegate pre-trial matters and the equitable accounting to the bankruptcy court.

I. Background

After appointment by the United States Trustee, the Committee, on behalf of all the unsecured creditors in the five related estates, issued demands upon the debtors to investigate and recover dividend payments and loan repayments made during the three years prior to the filing date, or to provide the Committee with the information necessary to initiate proceedings on its own. According to the Committee, the debtors did not investigate or provide the requested information. Because of the debtors' delays and the impending expiration of the statute of limitations, in August 1992 the Committee filed a motion for conversion of the cases or to appoint a Chapter 11

trustee. On October 2, 1992, the bankruptcy court authorized the Committee to commence actions against Appellants to recover fraudulent conveyances and preferential transfers and ordered the debtors to make corporate books and records available to the Committee.

According to the Committee, the books and records made available to them were in a state of "total and complete disarray," and while they suggested that certain transfers and conveyances had been made improperly, the Committee was unable to determine the dollar amounts of the transfers and conveyances at issue. (J.A. at 43.) On October 9, 1992, the Committee filed five complaints against Appellants in each of the five Stansbury-related bankruptcy cases. The complaints alleged that dividend payments had been paid while the debtors were insolvent in violation of Maryland law, that such payments also breached Appellants' fiduciary duty to creditors, that these dividends were fraudulent conveyances, and that various loan repayments were also fraudulent conveyances and preferential transfers under state and federal law. The last count of each complaint requested an accounting by Appellants of all the money they had received from the debtor corporations for the three years prior to the filing date.

II.

In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 36, 64, 109 S.Ct. 2782, 2802, 106 L.Ed.2d 26 (1989), the Supreme Court held that the Seventh Amendment entitled persons who had not submitted claims against a bankruptcy estate to a jury trial when they were sued by the bankruptcy trustee to recover an allegedly fraudulent monetary transfer, notwithstanding the fact that fraudulent conveyance actions are "core proceedings" under the Bankruptcy Code. 28 U.S.C. Sec. 157(b)(2)(H) (1988). In reaching this holding, the Court first concluded that fraudulent conveyance actions were actions at law, for which a jury trial is required by the Seventh Amendment. Granfinanciera, 492 U.S. at 45-47, 109 S.Ct. at 2791-2793. Next, the Court determined that the nature of the relief sought in the action--" 'money payments of ascertained and definite amounts' " with " 'no facts that call for an accounting or other equitable relief,' "--supported the conclusion that the rights involved in a fraudulent conveyance action are legal rather than equitable. Id. at 47-48, 109 S.Ct. at 2793-2794 (quoting Schoenthal v. Irving Trust Co., 287 U.S. 92, 95, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932)).

The Committee attempts to distinguish Granfinanciera and offers two arguments why Appellants are not entitled to a jury trial. First, the Committee asserts that because the requested equitable accounting is essential to resolve this action, Appellants are not entitled to a jury trial. Second, the

Page 125

Committee contends that any Appellant who has either filed a claim in one or more of the bankruptcy actions in this case or is listed on Schedule A.1 as a creditor holding a priority claim for wages, salary and commissions, has waived his jury trial right in all the other jointly-administered actions. We reject both of these arguments.

A.

The Committee contends that because the fraudulent conveyance actions in this case cannot proceed without an equitable accounting, Appellants are not entitled to a jury trial. According to the Committee, this is not a case, as was Granfinanciera, in which a bankruptcy trustee brought a simple cause of action for specified amounts of money. Rather, here, an equitable accounting is an essential element of the complaints and is necessary to determine the amount of money involved. The Committee also argues that the bankruptcy court as a specialized court of equity, see Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966), familiar with the nature of the debtor operations and financial circumstances is ideally suited to preside over the requested accounting.

While the Committee is correct that the fraudulent conveyance actions in this case are somewhat distinct from the claims for specified amounts presented in Granfinanciera, both are nevertheless legal actions seeking monetary damages. As the Supreme Court held in Granfinanciera, a right to a jury trial attaches to such actions. The Committee's additional requests for equitable accounting do not require that Appellants be denied their constitutional right to a jury trial on the fraudulent conveyance claims.

In Dairy Queen, Inc. v. Wood, 369 U.S. 469, 472-73, 82 S.Ct. 894, 896-99, 8 L.Ed.2d 44 (1962) (quoting Beacon Theatres v. Westover, 359 U.S. 500, 510-11, 79 S.Ct. 948, 956-57, 3 L.Ed.2d 988 (1959)), the Supreme Court reiterated that "where both legal and equitable issues are presented in a single case, 'only under the most imperative circumstances .... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.'" This is true regardless of whether the legal claims are characterized as incidental to the equitable claims; as long as there is a legal claim, "the jury trial rights it creates control." Id. 369 U.S. at 473, n. 8, 82 S.Ct. at 897, n. 8. As the Court stated in Dairy Queen:

[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings. The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is .... the absence of an adequate remedy at law.

Id. at 477-478, 82 S.Ct. at 900.

The legal remedy is not inadequate "merely because the measure of damages may necessitate a look into [Appellants'] business records." Id. at 479, 82 S.Ct. at 900. Rather, the Committee must demonstrate that the "accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." Id. at 478, 82 S.Ct. at 900 (quotation omitted). This is not such a case. While the state of the debtors' books may have made it difficult for the Committee to ascertain the precise amount of the alleged fraudulent transfers and conveyances prior to the expiration of the statute of limitations, we see no reason why the Committee cannot now obtain these specific amounts through the normal course of discovery. Indeed, in its memoranda opposing the motion to withdraw the

order of reference the Committee admits that "[d]iscovery will likely identify the scope of payments to all parties." (J.A. at 101, 201, 299-300, 398, 495.) In such a context, Appellants are still entitled to a trial by jury on their legal claims despite the Committee's addition of an equitable accounting claim.

B.

It is clear that by filing a proof of claim against a bankruptcy estate, a creditor "triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." Langenkamp v. Culp, 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990) (quoting Granfinanciera, 492 U.S. at 57-58 & n. 14, 109 S.Ct. at 2798-99 & n. 14). If a

Page 126

subsequent action alleging preferential transfers is filed against the creditor, that action becomes part of the claims-allowance process, "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction," and the creditor is not entitled to a jury trial. Langenkamp, 498 U.S. at 44, 111 S.Ct. at 331; Granfinanciera, 492 U.S. at 57-58, 109 S.Ct. at 2798-2799. If a party does not submit a claim against the bankruptcy estate, the preferential transfer can only be recovered through a legal action and the preference defendant is entitled to a jury trial. Langenkamp, 498 U.S. at 45, 111 S.Ct. at 331; Granfinanciera, 492 U.S. at 57-58, 109 S.Ct. at 2798-2799.

In this case, some Appellants concede that they have filed claims against one or more of the bankruptcy estates. Accordingly, these Appellants do not have a right to a jury trial in the Committee's action against them with regard to that particular bankruptcy estate. The Committee goes further, however, and contends that these Appellants have lost their jury trial right with regard to all the jointly-administered debtor estates. The Committee cites no authority for this contention, and we find no basis for it. We do not believe that the joint administration of these debtor estates, while eliminating duplication and making administration more efficient, should have the substantive effect on a protection as significant as the right to a jury trial as asserted by the Committee.

The Committee also asserts that any Appellants who are listed as creditors holding priority claims for wages, salary and commissions on Schedule A.1 should also be deemed to have filed proofs of claims. According to the Committee, such listings constitute proofs of claim under Sec. 1111(a) of the Bankruptcy Code, 11 U.S.C. Sec. 1111(a) (1988), and by allowing the listing to stand, without withdrawal, these Appellants have submitted to the bankruptcy court's equity jurisdiction for all purposes. The Committee argues that any Appellants listed on Schedule A.1 are participating in the claims allowance and disallowance process and therefore under Langenkamp and Granfinanciera, they cannot demand a jury trial.

In discussing preferential transfer and fraudulent conveyance actions, the Supreme Court has limited its discussion of the loss of a jury trial right to instances

where a creditor has voluntarily filed a proof of claim and chosen to submit himself to the equity jurisdiction of the bankruptcy court. See Langenkamp, 498 U.S. at 45, 111 S.Ct. at 331; Granfinanciera, 492 U.S. at 57-58, 109 S.Ct. at 2798-2799. We see no reason to expand the meaning of filing a claim to include a listing as a creditor. Indeed, in another case we specifically distinguished the listing of a creditor's claim in the debtor's schedule from active participation in the bankruptcy proceeding and held that such a listing is not sufficient notice to constitute a claim. See In re Davis, 936 F.2d 771, 775-76 (4th Cir.1991) (creditor must undertake some affirmative action to assert claim; listing of claim in debtor's schedule is not enough); In re Pigott, 684 F.2d 239, 245 (3rd Cir.1982) ("mere listing in the schedule of creditors is not sufficient to constitute a filing of a claim"). Therefore, we reject the Committee's arguments to the contrary and hold that only those Appellants who have filed a proof of claim against one of the Stansbury estates has lost his right to a jury trial, and even then only with regard to that particular estate.

III.

Determining that Appellants are in fact entitled to a jury trial does not end our discussion. We must next address whether the bankruptcy court has the authority to conduct jury trials in core proceedings such as the fraudulent conveyance and preferential transfer actions presented here. This issue of first impression in our Circuit is one on which other circuits are divided, and which the Supreme Court has twice declined to address. [2] The first circuit to address the

Page 127

issue was the Second Circuit, which held that bankruptcy courts may conduct jury trials. See In re Ben Cooper, 896 F.2d 1394 (2d Cir.1990). The Eighth, Tenth, Sixth and Seventh Circuits subsequently held that bankruptcy courts could not conduct jury trials. See In re United Missouri Bank, N.A., 901 F.2d 1449, 1451 (8th Cir.1990); In re Kaiser Steel Corp., 911 F.2d 380, 392 (10th Cir.1990); In re Baker & Getty Fin. Servs., Inc., 954 F.2d 1169, 1173 (6th Cir.1992); In re Grabill Corp., 967 F.2d 1152, 1161, reh'g en banc denied, 976 F.2d 1126 (7th Cir.1992). Relying on the prestige of the Second Circuit in commercial matters and the Supreme Court's eventual denial of certiorari, the district court followed In re Ben Cooper and held that the bankruptcy court could conduct the jury trials requested by Appellants. In doing so, the district court acknowledged the substantial ground for difference of opinion on this question of law. While the Second Circuit's opinion takes a legitimate approach, we agree with the reasoning of the other circuits which have addressed this issue and reverse the district court.

As the Seventh Circuit pointed out, divergence of opinion on whether bankruptcy courts may conduct jury trials is not surprising "given the ambiguous statute and legislative history." In re Grabill, 967 F.2d at 1153. Under the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549, bankruptcy courts were given an extremely broad grant of jurisdiction, and jury trial rights as they existed prior to the 1978 Act were preserved. 28 U.S.C. Secs. 1471, 1480 (1982). The Supreme Court held, however, in Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,

458 U.S. 50, 87, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598 (1982), that this extremely broad grant of jurisdiction to an Article I court, which included the power to hold jury trials, id. at 55, 102 S.Ct. at 2863, was unconstitutional.

In response, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act), Pub.L. 98-353, 98 Stat. 333, which repealed Sec. 1480. The Committee contends that Secs. 157(b)(1) and 151 of the 1984 Act authorized bankruptcy courts to conduct jury trials and that Sec. 1411 does not limit the bankruptcy court's power to conduct such trials. While Sec. 157(b)(1) grants bankruptcy judges the authority to "hear and determine ... all core proceedings," it contains no express authority to conduct jury trials. 28 U.S.C. Sec. 157(b)(1) (1988). Section 151 states only that "[e]ach bankruptcy judge ... may exercise the authority conferred under this chapter...." 28 U.S.C. Sec. 151 (1988). Section 1411 merely provides that nothing in the Bankruptcy Code affects rights to jury trials in personal injury and wrongful tort actions. 28 U.S.C. Sec. 1411. Indeed, there is a consensus that the 1984 Act contains no express statutory authority for the bankruptcy court to conduct jury trials. See In re Ben Cooper, 896 F.2d at 1402 (concluding that "[t]he relevant statutory provision ... offers almost no guidance" and holding that bankruptcy courts may conduct jury trials "[d]espite the lack of a specific statutory provision"); In re United Missouri Bank, 901 F.2d at 1453 ("There is no specific grant of authority allowing or prohibiting bankruptcy judges from conducting jury trials...."); In re Kaiser Steel, 911 F.2d at 391 ("We are also persuaded by the absence of any express provision authorizing jury trial before bankruptcy judges."); In re Baker & Getty, 954 F.2d at 1173 ("[N]o statutory language supports jury trials in bankruptcy courts."); In re Grabill, 967 F.2d at 1153 ("There is no express statutory authority in the [1984 Act] granting bankruptcy courts the power to conduct jury trials.").

The legislative history is similarly unenlightening. The Tenth Circuit concluded that:

Congress had no specific intent to vest bankruptcy judges with the authority to conduct jury trials. Until Granfinanciera, it was possible for Congress to presume that jury trial rights would not extend to core proceedings. As such, no authority to conduct such trials needed to be granted.

In re Kaiser Steel, 911 F.2d at 392. The Eighth Circuit stated that "[i]f Congress did not consider the constitutionality of denying jury trials, we doubt if it considered the need to provide for authority for the bankruptcy court to conduct a jury trial." In re United Missouri Bank, 901 F.2d at 1456. We also

Page 128

agree with the Seventh Circuit's conclusion that "any attempt to glean implied congressional authorization from the scant legislative history amounts to 'an illusory search.' " In re Grabill, 967 F.2d at 1154 (quoting In re Jackson, 118 B.R. 243, 243 (E.D.Pa.1990)).

The question then becomes whether we will imply the authority for bankruptcy courts to conduct jury trials in the absence of any express statutory provision or clear congressional intent. We decline to do so for the same reasons that motivated the majority of circuits who have faced this issue. While the Committee may be correct that allowing bankruptcy courts to conduct jury trials might be consistent with the statutory scheme, it is not enough that the power to be implied is consistent with the legislation. In re United Missouri Bank, 901 F.2d at 1456. Rather, " '[t]he power to be implied ... must be practically indispensable and essential in order to execute the power actually conferred.' " Id. (quoting 2A Sutherland Stat. Constr. Sec. 55.03). Moreover, our conclusion that bankruptcy courts may not conduct jury trials avoids "the constitutional issue lurking in the background" regarding whether vesting such authority in an Article I court would violate Article III or the Seventh Amendment. In re Grabill, 967 F.2d at 1157.

Finally, we agree with the Seventh Circuit that "[w]e are entitled to assume that Congress legislated with care in amending the Bankruptcy Act, and that had it intended to provide for jury trials in bankruptcy court, it would not have left the matter to mere implication." Id. at 1155 (quotation omitted). While the Committee contends that the goal of efficient judicial administration favors jury trials in bankruptcy courts, there are equally valid efficiency concerns weighing against tying up bankruptcy courts in lengthy jury trials. Id. at 1157-58; In re Grabill, 976 F.2d at 1126 (published opinion denying rehearing) (discussing policy reasons against jury trials in bankruptcy court). More importantly, however, we do not believe any of the pragmatic concerns expressed by the Committee are sufficient to warrant implying the authority for bankruptcy courts to conduct jury trials given "the textual ambiguity and the sparse legislative history" present with regard to this issue. In re Grabill, 967 F.2d at 1158. Accordingly, we hold that bankruptcy judges are not authorized to conduct jury trials; where the Seventh Amendment provides the right to a jury trial in a core proceeding in bankruptcy, it must take place in the district court.

IV.

In closing, we address the Committee's request that if we hold that Appellants are entitled to a jury trial and that this jury trial must be held in district court, we should direct the district court to consider whether to postpone withdrawal of the order of reference until the parties have conducted discovery and the accounting is accomplished. We think this is an entirely reasonable request. Our holding that bankruptcy judges are not authorized to conduct jury trials does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial. The decision whether or not to withdraw the referral immediately "is frequently more a pragmatic question of efficient case administration than a strictly legal decision." Travelers Ins. Co. v. Goldberg, 135 B.R. 788, 792 (D.Md.1992). While the bankruptcy court may be uniquely qualified to conduct pre-trial matters in some core proceedings, in other cases such a referral would be a "futile detour, requiring substantial duplication of judicial effort." Compare Travelers Ins. Co., 135 B.R. at 792-93 with City Fire Equipment Co. v. Ansul Fire Protection

Wormald U.S., Inc., 125 B.R. 645, 649 (N.D.Ala.1989) (bankruptcy court has the authority and is uniquely qualified to supervise discovery and decide pre-trial issues). This type of pragmatic decision is best left to the district court and we remand for that court to consider the Committee's request.

V.

For the foregoing reasons, we reverse the district court and hold that those Appellants who have not filed a claim against a particular bankruptcy estate are entitled to a jury

Page 129

trial in the Committee's action against them with regard to that estate and the jury trial must be conducted in the district court. We remand for the district court to determine when it will withdraw the order of reference prior to the jury trial.

REVERSED AND REMANDED.

---------------

1 The district court certified the denial of Appellants' motions for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b) (1988). Subsequently, a three-judge panel of this court granted Appellants' petition for interlocutory review.

2 See Granfinanciera, 492 U.S. at 50, 109 S.Ct. at 2794-95; In re Ben Cooper, 896 F.2d 1394 (2d Cir.1990), cert. granted, 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779, cert. vacated and remanded, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408, previous op. reinstated, 924 F.2d 36 (2d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).